O'Meara *v.* The North American Mining Company.

---

## JOHN O'MEARA, Respondent, *v.* THE NORTH AMERICAN MINING CO., Appellant.

The true measure of damages in an action of trover, is the value of the article when converted, with interest on that value to the time of trial. Per BEATTY, J.

This rule should have this modification, if there is an actual conversion at one time not known to plaintiff and he afterwards demands his property and is refused, he may treat this conversion as only having taken place when he demanded the property. Per BEATTY, J.

In this cause the prayer of the bill is for stock, and if that cannot be had, then an alternative decree for its value. In such a case the measure of damages is the value of the stock when the decree is rendered.

O'Meara *v.* The North American Mining Company.

'The proof offered as preliminary to the admission of a certified copy of a deed was not sufficient to comply with established rules of law. But the defect was merely technical and could have been supplied. It is a better practice in a Court of Chancery to allow such defects to be cured, than to deprive parties of their substantial rights for a mere technical error or omission. Per BEATTY, J.

Courts of Equity should, in all cases, allow reasonable delay and indulgence to defendants to establish their rights. Per BEATTY, J.

The Court did not use a wise discretion in rejecting this deed without further inquiry. Per BEATTY, J.

A party executing a deed cannot avoid it because he spells his name wrong in attaching his signature to it.

When one deeds all his interest, say one hundred and thirty-seven and one-half feet, in a mining company to Trustees, to form a corporation, in trust that he is to receive shares in the corporation in lieu of the feet, and afterwards conveys the same feet with covenants of warrantee to another party, the last grantee takes an equity and is entitled to the shares to be issued in lieu of these feet.

When Trustees of a mining company issue stock to the party equitably entitled, the Court will not compel them to issue to another, especially when that other can only show his claim by establishing his own fraud.

Per LEWIS, C. J. I concur in the measure of damages established in this case, but am not satisfied as to the general rule mentioned in the opinion.

I do not think defendant laid the proper foundation for admitting the copy of the first deed offered in evidence.

APPEAL from the First Judicial District, Storey County, Hon. RICHARD S. MESICK presiding.

The facts, so far as they relate to points decided, are fully stated in the Opinion.

*Hillyer & Whitman,* for Appellants, made the following points as to those matters that are passed on in the Opinion of the Court:

*First*—The Court adopted an erroneous rule in estimating damages.

There being no proof before the Court of the value of stock at the time of trial, there was no basis for a judgment. (*Smith* v. *North American Co.,* 1 Nevada, 442.)

*Second*—The judgment for damages could only be alternative, on failure to deliver stock. (*Ib.*)

*Third*—The Court erred in refusing to admit the deeds to Petty-bridge, Apple, Van Vleit and Harris, as they afforded preliminary proof which, taken in connection with other evidence, went to show

that defendant had issued all its stock to the parties properly enti-
tled to receive it.

*Fourth*—The Court erred in rejecting the copies of deeds.
Sufficient predicate had been laid for their introduction.

*Taylor & Campbell* and *Isaac Atwater*, for Respondents, made
the following points :

I.    It appearing from the answer of defendant that it had no
stock which it could issue to plaintiff, he was entitled to recover
the value of the shares. (*Pollok* v. *National Bank*, 3 Seld. 274.)

II.    The true rule of damages is the full value of the stock at
its highest price, between the time of the refusal to issue certifi-
cates and the time of the commencement of this action.    (Angel
& Ames on Corp. § 565 ; *Kortwright* v. *Buffalo Bank*, 20 Wend.
91 ; *Com. Bank of Buffalo* v. *Kortwright*, 22 Wend. 366 ; *West*
v. *Wentworth*, 3 Cow. 82 ; *Wilson* v. *Little*, 2 Comst. 449 ; *Doug-
las* v. *Craft*, 9 Cal. 563 ; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 116.)

III.    There was no error in excluding the deed from O'Meara to
Pettybridge ; it does not appear to be the deed of the plaintiff, as
the name of the grantor is not that of plaintiff, nor is the ground
described in the deed the ground in dispute.    No proper predicate
had been laid for the introduction of the deed.    (2 Phil. on Ev.
[3d Edition] pp. 229, 233–4 and Note ; 4 Id. [Cow. & Hill's
Notes] p. 441 and cases cited ; *Jackson* v. *Hasbrouck*, 12 Johns.
191 ; *Jackson* v. *Frier*, 16 Johns. 193 ; *Daw* v. *Brown*, 4 Cow.
483 ; *Jackson* v. *Root*, 18 Johns. 60 ; *Folsom* v. *Scott*, 6 Cal. 461 ;
*Norris* v. *Russell*, 5 Id. 251 ; 1 Greenl. Ev. § 558.)

IV.    The deeds to Harris and Van Vleit were properly excluded.
They were executed after plaintiff had conveyed all his interest in
the ground to defendant.

Opinion by BEATTY, J.

This was a proceeding in equity to compel the transfer of certain
shares of stock to the plaintiff ; and if said stock could not be trans-
ferred, then asking a decree for compensation and damages, for the
failure to transfer the stock.

The plaintiff alleges that he had held five hundred and fifty feet of
ground in the North American Mining Co. claim.    That he first sold

and assigned three hundred and fifty-two and a half feet of it to individuals, and then conveyed the remainder, one hundred and ninety-seven and a half feet to the trustees of a corporation formed to work said claim.    That in consideration of said conveyance he was to have had transferred to him one hundred and ninety-seven and a half shares of stock.    But before the deed to the Trustees was recorded, he admits having sold ten feet more of the ground.    So he only claims that the Trustees should transfer to him one hundred and eighty-seven and a half shares of stock.

The answer alleges that the plaintiff, before the conveyance to the Trustees, had conveyed to others three hundred and seventy-seven and a half feet, (say twenty-five feet more than plaintiff admits) and after the conveyance to the Trustees, and before they were ready to issue the stock, he had conveyed his interest in one hundred and eighty-two and a half feet to others.    This would make more by ten feet than plaintiff ever claimed in the company.

On the trial of the case, the plaintiff proved that he had made a demand for his stock in the latter part of June, 1863 ; and proved that in the year 1864 this stock was at one time worth two hundred dollars per share, and rested.

The defendant proved conveyances from the plaintiff to the amount of three hundred and eighty-seven and a half feet, which were admitted without objection.    The defendant then offered in evidence three other deeds, or rather copies of deeds, from the plaintiff to other persons, for other portions of the same mining ground.    These instruments were rejected, and this rejection forms the principal ground of complaint on the part of appellant.    The facts in relation to each one of these instruments will be more particularly noticed when we come to consider the assignment of errors.

There are numerous errors assigned by appellants, only two of which it will be necessary to notice, as a determination of these points will probably settle the entire controversy.    The first assignment of error is that the Court adopted an erroneous rule in estimating damages.

The plaintiff, if entitled to stock at all, became so entitled about the last of June, 1863.

At that time he demanded his stock, and it was refused.    He offered no proof of the value of the stock at the day he demanded

O'Meara *v.* The North American Mining Company.

it, nor at the day of trial. He only offered proof of the highest market value of the stock between the tenth day of June, 1863, and the day of trial. It was proved that, at one time in April, 1864, the stock was worth two hundred dollars per share. And the Court gave judgment in damages for the value of the stock at that price. This was clearly an erroneous basis for the estimation of damages.

In the action of trover, it has been sometimes held that the measure of damages is the highest price of the article converted between the day of conversion and the day of trial. In other cases, between the conversion and the commencement of action.

Whilst it cannot be denied that there are some respectable authorities containing both these propositions, we cannot think they are founded either in reason or justice. We think such propositions contrary to some of the best settled principles of the Common Law.

The theory of all actions for damages is, that the plaintiff sues for those damages which he has already sustained. He could not say in his complaint that he had already sustained certain damage, and expected to sustain other damage before the suit was tried. Nor could he say he had sustained certain damage by the conversion of his property, and subsequently other damage arising from the fact that the particular kind of property converted had risen in value since the conversion.

The action is for converting the property; the utmost limit of damages would be the amount of money it would have taken to replace the property converted. But as the plaintiff has to wait for that money until he recovers it in his action, doubtless it would be just and proper to allow interest from the time of conversion. That the property afterwards rises or falls in value cannot be the subject of legitimate inquiry. If the plaintiff were allowed to show after the conversion the property rose in value, and the conversion deprived him of this profit, it would be proper to allow defendant in rebuttal to show that, if the property had not been converted, plaintiff would have sold, and that not he, but another, would have made the profit. Why not allow the defendant to show that if he had not converted the property, plaintiff would have exchanged it for other property, which afterwards became worthless, and thereby defeat all claim for damages? Such propositions would not, of

course, be listened to with respect by any Court, yet we think they are scarcely less in conflict with the established and settled doctrines of the law than the proposition to allow the plaintiff to prove the temporary speculative value which an article may have had months or years after conversion.   We think the true rule of damages in a case of trover is the value of the article when converted, with interest from that time to the time of trial, with perhaps this modification: when there has been an actual conversion at one time, which however is not clearly brought home to the knowledge of the plaintiff, and he subsequently makes a demand for the article, and is refused, he·may prove value at the time of the demand and refusal. For although there may have been an actual prior conversion, he is not properly bound by it until he knows it has been converted.  As he could not know the actual time of conversion, he ought, as against a wrong-doer, to be allowed to prove the value at the time he first learned he could not obtain his property on demand.

And we are satisfied that some of the ablest Courts of the United States have uniformly held that the measure of damages is to be fixed by the value of the property at the time of conversion.   The decisions of the Courts of Massachusetts and Kentucky have, we think, uniformly adopted this rule.

On the other hand, those Courts which have held that the highest price of an article between the time of conversion and trial, or commencement of the action, is the proper criterion of damages, are not uniform or consistent in their rulings.   But, whatever may be the rule in a case of trover, there could be no room for doubt in such a proceeding as this.

The plaintiff asks for the stock itself, not for damages.  If the Court finds he is entitled to the stock, but defendant cannot transfer the stock, because it has none to transfer, then there can certainly be but one rule or measure of damages : that is to decree as much as would buy the same amount of stock at the time the decree is rendered, for the money comes in lieu of the stock—stock which should be transferred at or after the decree, and it is wholly immaterial what that stock may have .been worth. at any former period.

The other assignment of error which we shall notice is as to the rejection of certain deeds offered in evidence by defendant and

rejected by the Court. The first paper offered was a certified copy of a deed from John *O'Mara* to Pettybridge, dated September, 1860—twenty-five feet of ground in the North American claim. Before offering the certified copy, defendant introduced the following preliminary testimony. L. Hermann testified as follows : " I am Secretary of the defendant ; the company has not the custody or control of a deed from plaintiff to P. Pettybridge for any portion of ground of which defendant is in possession. It has not the custody nor control of a deed for any such ground from plaintiff to W. Van Vleit, or W. B. Harris. No such papers are in possession of the company."

B. C. Whitman testified : " I have made search among the papers shown me by L. Hermann, as belonging to the defendant, and cannot find either of the deeds by him referred to."

W. G. Orrick says : " I made search among the papers of J. R. Plunkett, deceased, former Secretary of defendant, for the papers referred to, and could not find them." On cross-examination he said : " I never had search made at the company's office, and no authority to make the search I did."

Robert Apple testified : " I know of a deed from plaintiff to P. Pettybridge for twenty-five feet of North American ground. I bought of Pettybridge, and would not complete the transaction, because the deed was not acknowledged. So I went with the plaintiff to the office of Samuel Arnold, in Gold Hill, and the plaintiff there acknowledged the deed before him. Arnold was a Notary Public ; he attached his certificate, and I paid for it after it was acknowledged. Pettybridge made transfer on the same paper to me, and acknowledged it before the same Notary. This occurred some time in the spring of 1863. I have not the deed now. I gave it to defendant."

Then a copy of the deed, duly certified by the Recorder of Storey County to be a copy taken from his records, which also contained the Notary's certificate, the certificate of the former Recorder of recordation of the instrument, etc., etc., all in due form, was offered in evidence. The plaintiff objected to its introduction, because there was no proof of the existence of the original, nor of its loss or destruction, and because it did not purport to be the deed of the plaintiff.

O'Meara *v.* The North American Mining Company.

That there was such an instrument, was positively proved by Robert Apple. That the instrument was lost or destroyed, it is true, was not proven. Nor is any such proof necessary in regard to recorded instruments. All the statute requires as preliminary to the introduction of a certified copy of a recorded deed is to show either that it is lost *or that the party wishing to use it has it not in his power.* Here L. Hermann swears the company had not the *custody or control* of the paper. This is some proof, certainly, of the only material fact to be established. But it is very unsatisfactory. Witness does not state how he obtained his knowledge that the company had not the custody of the paper. He does not say he was the custodian of the papers of the company. He does not show that he made any search for the original. Indeed, he shows no circumstance which would entitle him to make the positive assertion he does make.

Ordinarily, we should have thought very little testimony on this head was necessary, because it was not to be supposed that the company would be custodian of a deed from O'Meara to Pettybridge. Naturally we would suppose that deed to be in the possession of the grantee; and, perhaps, under ordinary circumstances, if the Secretary had simply said he was the custodian of the company's papers, and did not know of the whereabouts of the deed—that it had never been in the possession of the company that he knew of—this would have been sufficient. But in this case, Robert Apple proves that he delivered the deed to the company, and it having been once in possession of the company, they should have produced the deed, shown that it subsequently passed out of their possession, or that they had made an honest attempt to find it. If the evidence is fully reported, defendant does not show that any *bona fide* search was made for it. Mr. Whitman searched the papers handed to him by the Secretary, but the Secretary does not show he handed him all the papers. The proof was very meagre; yet we hardly think the deed should have been finally rejected even on this proof.

It was a matter addressed to the discretion of the Judge. The Secretary of a company is usually the custodian of the papers of the company. If the Judge was not fully satisfied in this case that the Secretary was the custodian of all the papers of the company, it would certainly have been better to inquire on that point

than reject a paper which was so essential to the defense. It appears, too, that the Secretary who formerly had charge of the papers of the company was dead, and that the present Secretary came into office after this deed was delivered to the company. That being the case, he may not have been aware that the company ever had the deed, and therefore felt the less necessity for looking for it. It would most certainly have been more satisfactory if proper inquiries had been made on this subject; and if proper search had not already been made, time might have been given to the Secretary to make such search. This could have been done without inconvenience or delay, as there was no jury in the case. The deed was a recorded instrument; the public usually look to the records without inquiring about the original. There is scarcely a probability that any material error could have occurred in the copying. Here there was proof outside the record that the plaintiff did execute the deed. There was no real doubt as to plaintiff having executed such a deed. We can hardly conceive that a Court of Equity is performing its legitimate duty when under such circumstances it rejects a deed which is essential to the defense, and gives judgment against a defendant for a large sum of money, not because the presiding Judge is convinced defendant ought to pay it, but because defendant has committed some technical error in making its defense.

If a complainant goes to trial in a Court of Equity and fails to make out a case justifying a decree in his favor, yet showing that he probably has an equity which he might make out at another time, his bill is dismissed without prejudice, thus allowing time to begin anew, and not cutting him off from all chance of obtaining his just rights. So if a defendant evidently and beyond all reasonable doubts has a good defense, the Court should grant some delay and give some indulgence to enable him to make out that defense according to the prescribed forms of law. Courts of Equity are instituted to do justice, and not to play at games of chance or skill. Again, in this case, the objection raised to the admission of the deed was, that the loss of the deed was not properly shown. Nothing of the kind had to be shown. Had the point been properly made—that defendant had failed to show the original was not in its power—perhaps a further examination of Hermann might have removed the difficulty.

We do not think the Court made a wise and prudent use of its discretionary powers in rejecting the deed without further inquiry.

The other objection to this deed we can hardly treat seriously. The signature to the deed is spelled *O' Mara*. The plaintiff in his complaint spells his name *O' Meara*, the Notary in the certificate spells it *O' Mera*. Here we have three spellings of the name. But any English scholar knows that *a*, *ea* and *e* have in many words the same sound. Especially is it so in proper names and in many foreign words. Both *e* and *ea* frequently have the same sound as *a* in fame and many other English words. Then even according to the strictest rules of pleading these names would be considered and treated as the same. They are *idem sonans*. But how are we to know what is the proper spelling of plaintiff's name ? It is proved that he acknowledged the signature of *John O' Mara* as his signature. He acknowledged this particular deed as his deed. Can he avoid his own deed by getting a lawyer to spell his name wrong in a complaint filed ? If one of these spellings is right and the other wrong, from all the proof before this Court it must be presumed that *O' Mara* was right, for that was the signature plaintiff acknowledged, and *O' Meara* is wrong, for we have no further proof of the correctness of this spelling than that we find it in the complaint. We think it is hardly to be presumed that a lawyer always spells his client's name right, especially when his client spells it differently.

But it is in reality a matter of no importance which spelled the name right, or whether either of them spelled it right. A party can neither avoid his deed by omitting one letter of his name when he attaches his signature to it, nor by employing a lawyer to add an extra letter to the spelling when he files a complaint. The question here was, did the plaintiff—the man prosecuting this suit—make the deed offered in evidence. The proof was positive that he did acknowledge having made it, and that was sufficient reason for admitting it, without any inquiry as to the proper spelling of his name.

The next paper offered in evidence was a certified copy of a deed from John O'Meara to W. B. Harris, dated June 11th, 1863. This was objected to as incompetent and irrelevant testimony; only on the ground that it was made after plaintiff had conveyed all his interest in the mining ground to the Trustees of the defendant. The

9

deed is for an interest of one hundred and thirty-seven and a half feet in the North American claim. It is very full, and purports to carry not only the one hundred and thirty-seven and a half feet, but any and all equities plaintiff may have had in that many feet in the North American Company's claim. It also contains a full warrantee deed that said one hundred and thirty-seven and a half feet are clear and free from all incumbrances, sales or mortgages made by plaintiff.

At the time this deed was made, plaintiff had conveyed the legal title to all his feet or undivided interest in the mine to the Trustees of the corporation. But he certainly had an equity in those feet. He was entitled to one hundred and thirty-seven and a half shares of stock in lieu of the feet. There can be no doubt but it was the intention of the grantor to convey that equity. The language used sufficiently expresses that intention, although the words shares and stock do not appear in the deed.

But where the intention of a party is sufficiently apparent, a Court of Equity will carry out that intention, even if the most appropriate language is not used to express what was meant. The proof shows here that plaintiff had just one hundred and thirty-seven and a half feet of ground undisposed of when he deeded to the Trustees of the corporation, and that he was entitled to just one hundred and thirty-seven and a half shares of stock in lieu of those one hundred and thirty-seven and a half feet. What did he mean by making this deed? Either one of two things: to deed and transfer to Harris his right to demand the one hundred and thirty-seven and a half shares, or else to swindle Harris by deeding to him ground or feet which he had already deeded to others. In either event Harris was entitled to the stock. A mere verbal order to the Trustees to deliver certificates of the stock to Harris would have been sufficient. If this deed was intended as a written transfer of O'Meara's right to the stock, as we think it clearly was, it is certainly sufficient. If, on the contrary, the deed was intended as a mere fraud, and a trick to get Harris' money for nothing, a Court of Equity would not hesitate to give Harris the stock, in lieu of the mining ground which by the terms of the deed he was to have.

If the company issued the stock to Harris, who was equitably

entitled to it, the Court would not grant its aid to the plaintiff to recover the same stock from the company. A party will not be allowed in a Court of Equity to establish a claim by showing his own fraud and deceit.

We cannot, of course, know what might be brought out on a future trial of this case, and can only reverse the judgment and send it back for further hearing ; but unless some new facts can be made to appear, different from those disclosed in this transcript, we can but express the hope that plaintiff will dismiss the case, and not again place himself in so unenviable a position as the evidence in this record has placed him. · Judgment reversed, and cause remanded for further proceedings.

Opinion by LEWIS, C. J.

I concur in the judgment of reversal in this case, but as to the rule of damage adopted, I do not wish to be understood as sanctioning it as a general rule. In cases of this character it is undoubtedly correct. I am not, however, prepared to say that in some other form of action the highest value of the stock between the time of conversion and that of trial would not be the proper measure of damage.

I am also of opinion that the defendant did not establish a proper foundation for the admission of a copy of the deed from the plaintiff to Pettybridge, and therefore that the Court below ruled correctly in excluding it. But as to the exclusion of the deed from O'Meara to Harris, I fully concur in the views expressed by Justice Beatty.

RESPONSE TO PETITION FOR RE-HEARING.

Ordinarily the measure of damages in trover is the value of the article when converted, together with interest thereon, subject however to some qualifications.

The market value at time of conversion, and interest, will not in all cases be compensation to the plaintiff.

The true rule seems to be, the value of the article when converted, together with such additional damages as shall cover not only every additional loss which the plaintiff has sustained, but any additional value which the wrongdoer has obtained, or has it in his power to obtain.

The highest market value between the conversion and trial is not the rule, unless it be shown that but for the conversion the plaintiff would have realized that price.

Where the proceeding is in equity to compel the delivery of stock, and the defendant is unable to deliver it, the alternative decree should be for the value of the stock at the time of the trial.

The defense here was equally good, whether the defendant had delivered, or was only bound to deliver the stock to a third party. If another party was entitled to the stock, plaintiff could not be so entitled.

Opinion by LEWIS, C. J., BEATTY, J., concurring.

In their petition for re-hearing in this case, counsel for respondent claim that this Court erred in the rule of damage adopted by it in its former opinion. I was not at that time prepared to sanction the general rule as stated by Justice Beatty; but after a thorough examination of the authorities, I am convinced that with some qualifications it is the correct rule in trover.

It was stated in that opinion that the general rule of damage in an action for the unlawful conversion of personal property, is the value of the property at the time of conversion, with legal interest thereon from the time of such conversion.

It is manifest, however, that this rule would not in all cases afford the owner such indemnity as in justice he might be entitled to; and in some cases under it the wrongdoer might make a profit by his unlawful act, which I think is repugnant to the general spirit of the law. The first object of the law in actions for wrongful conversion or detention for personal property should be to place the owner in as favorable condition as if he had not been deprived of his property, or to give him ample and full indemnity for its loss; and it should be no less an object to deprive the wrongdoer of any profit which he may have derived, or which he has it in his power to realize from his own wrong.

The rule, therefore, which seems to me most consonant to justice, and most in harmony with the spirit of the law, is, that the owner of the property wrongfully converted or detained shall receive as a measure of damage the market value of the article at the time of the conversion, together with any damage which he is proven to have sustained from the loss of its possession. It is clear that the addition of legal interest to the market value of the prop-

erty will not in all cases compensate the owner for his loss.   If it be satisfactorily established that the loss which the owner has sustained by the wrongful conversion of his property amounts to more than its value at the time of conversion, with legal interest thereon, why should he be confined to the recovery of the latter sum ?   It is not a full compensation for the loss which he has suffered, and I see no good reason why the law in such case should sanction injustice when it can afford complete relief.   There are many cases where it may be established beyond a doubt, that if the owner had not been dispossessed of his property he would have realized more money from it than its value at the time of conversion, with legal interest.

The case of a contract to deliver the property to a solvent purchaser at a price exceeding that it bore at the time of the wrongful conversion, clearly shows the injustice of confining the owner's recovery to the price of the article at the time of conversion, with interest thereon.   Under such circumstances it would be pretty clearly established, that if not dispossessed the owner would have realized the enhanced value of the article, which might far exceed the value at the time he was deprived of the possession, with legal interest.   Of course it would not be sufficient to show that the owner *might* have taken advantage of an appreciation in the market value.   Facts must be shown sufficient to satisfy the jury that he *would* have done so.   But it may be said, if the owner is permitted to show that he would have realized more than the market value of the article at the time of conversion if he had not been deprived of the possession, the wrongdoer should on the other hand, as a defense, be permitted to show that if the owner had continued in the possession he would have lost his property entirely, or that it had so depreciated in value that he would never have realized even the value which it bore at the time of its conversion. This cannot be allowed, because, as we stated before, the law will not allow the wrongdoer to make a profit out of his own wrong.

After a thorough and able examination of this question, Justice Duer, in delivering the opinion of the Court in the case of *Suydam* v. *Jenkins*, (3 Sandford's R. 614) lays down what seems to me to be the correct rule, in the following manner:

" We think it follows from the observations that have been made

and the illustrations that have been given, that the principles which we have stated as those which ought to determine the amount of the judgment will be carried into effect in all cases *by adding to the value of the property when the right of action accrued, such damages as shall cover not only every additional loss which the owner has sustained, but every increase of value which the wrongdoer has obtained or has it in his power to obtain.* And we are satisfied, after much consideration, that there is no other mode of computation by which, as a universal and invariable rule, the same result can be attained."

This, in my opinion, is the correct rule of damages in all cases arising out of the wrongful conversion of personal property, where the relief sought is damages for such conversion.

The case referred to in 3 Sanford clearly shows also that the highest market value of the property between the time of conversion and the time of trial is not the correct measure of damage, unless it is fully shown that the owner would have realized that value had he not been deprived of the possession by the wrongdoer.

When, however, the action is in equity to compel the redelivery or transfer of stock, as in this case, the rule is different, and it seems to us there can be no doubt as to what the judgment should be. The principal relief asked is a delivery of the stock, and not damages for its conversion, although that is sought as alternative relief. If it appears upon the trial that it is not in the power of the defendant to deliver the stock, the measure of damage most assuredly should be the value of the stock at the time of trial. When the relief sought by the plaintiff is the delivery of the stock, is he to be placed in a better condition by the inability of the defendant to deliver it, than he would be, if the defendant had it in his power to replace or transfer it as prayed for by the plaintiff? In a case of this kind it seems to us the judgment should be for the stock, and in case the defendant failed to deliver it, then that plaintiff recover its market value at the time of trial. The value of the stock in such case is given in lieu of the stock itself. This is certainly the rule in chancery, and we can see no possible means of avoiding it. The plaintiff could undoubtedly have brought his action for damages, and in such case, the judgment would have been for the value of the stock, with

any additional loss which he could show he had sustained by reason of the unlawful conversion under the rule as above stated.

He has not, however, chosen to bring his action for damages, but for the stock itself. Why should he then be permitted to recover more than the stock, or its value at the time it would have been delivered to him under the judgment, if the defendant had it in his power to deliver it ? It is perfectly clear that the plaintiff must be entitled to some relief beyond the delivery of the stock, if he is entitled to a money judgment for more than its value at the time of trial. But here the plaintiff prays for a delivery of the stock, and as it was shown that the defendant did not have it in its possession, a money judgment for its highest market value after conversion is rendered against the defendant. In our opinion, the plaintiff was only entitled to a judgment for a delivery of the stock, or in case delivery could not be had, then its value at the time of the trial.

Upon the ruling of the Court in rejecting the certified copy of the deed from O'Meara to Pettybridge, it is unnecessary to say anything. In my own opinion, the Court ruled correctly in rejecting it, but no such question need come up upon the new trial of this case, for the reason that the preliminary proof which the defendant failed to produce before can readily be supplied at the new trial. Hence it is a question of no importance now, and a further consideration of it is unnecessary.

The question raised upon the deed from the plaintiff to Harris is fully discussed in the original opinion in this case, and upon further consideration we are fully satisfied that we held correctly. Whatever might be the effect of that deed, at law, it cannot be doubted for a moment that Harris could in a court of equity have compelled the defendant to deliver to him the stock representing the number of feet for which he had paid a valuable consideration, if it had not already delivered it to the plaintiff.

He had paid O'Meara for his interest in the North American mine. Will it be said, then, that a court of equity would not compel the plaintiff to deliver the stock which represented that interest to the purchaser ? If O'Meara himself could be made to transfer the stock, the company which held it for him could certainly be compelled to do so.

We conclude, therefore, that it made no difference that it was not

shown that the stock had been delivered to Harris. It was sufficient for the defendant to show that it was liable and equitably bound to deliver it to him if he called for it, which it did do by the introduction of the plaintiff's deed to Harris.

We see no good reason for granting the re-hearing; it is, therefore, denied.