## AMERICAN INDEMNITY CO. v. McCANN.

### No. 1498—5781.

Commission of Appeals of Texas, Section A.

Jan. 6, 1932.

Terry, Cavin & Mills and Joyce Cox, all of Galveston, for plaintiff in error.

James M. Taylor and E. B. & Howell Ward, all of Corpus Christi, for defendant in error.

CRITZ, J.

This suit was instituted in the district court of Nueces county, Tex., on June 4, 1921, by George McCann against H. R. Smeltzer and John Miller. The petition alleges, in substance, that Smeltzer and Miller, who we will hereinafter call the defendants, took possession of certain property belonging to McCann, consisting of boats, seines, etc., used in the fishing business by McCann. The prayer is for possession of the property alleged to have been converted and for damages. McCann filed affidavit and bond and obtained writ of sequestration, by virtue of which the property was sequestered. The defendants filed replevy bond executed by themselves, as principals, and the American Indemnity Company, hereinafter called the "Indemnity Company," as surety, in the sum of $2,100. The defendants answered by general demurrer and general denial.

It seems that the case remained on the docket from June 4, 1921, until the date of trial, June 11, 1929. On the last-named date trial was had with a jury in the district court, which resulted in a verdict and judgment for McCann. On appeal by the Indemnity Company only, this judgment was affirmed by the Court of Civil Appeals. 27 S.W.(2d) 354. The case is in the Supreme Court on a writ of error granted on application of the Indemnity Company.

On the trial of the case in the district court, the jury found that the property replevied was worth on the date of conversion the sum of $1,153; and that the value of the fruits, hire, revenue, and rent thereof from the time of conversion to the date of trial was $10,000. Based on this verdict the court entered judgment against the defendants for $11,153. The defendants have not appealed and we are not concerned with the judgment against them.

Based on the verdict of the jury and the affirmative findings of the court apparent of record on the face of the judgment to the effect that the defendants had executed replevy bond in the sum of $2,100, conditioned in terms of the law, with the Indemnity Company as surety; that the property had been released to the defendant by virtue of such bond; that such property was of the value of $1,003 at the time it was released; and that the defendants had disposed of such property and same could not be returned—the court rendered judgment against the Indemnity Company for the full amount of the bond.

As we gather from the record, the Indemnity Company makes two main contentions as to why the judgment against it cannot be sustained:

1. That the record in this case shows, as a matter of law, that the suit was abandoned and therefore the district court had no jurisdiction to render the judgment. And

2. That there is no evidence in the record to sustain any judgment whatever against the Indemnity Company, and that the judgment shows upon its face that the value of the property as of date it was replevied formed its basis.

The contention that there is no evidence in the record to sustain a judgment against the Indemnity Company is based (a) upon the further contention that there is no evidence in the record showing the value of the replevied property at the time of trial, it being contended that as to such item of damages the value of the property at the time of trial must govern as to the liability of the surety, and (b) that there is no evidence in the record showing the value of the fruits, hire, revenue, or rent of the property during the period of detention.

As to the first contention, that is, that the record shows an abandoned suit, we find that this case was first filed on June 4, 1921, and was not finally tried until June 11, 1929,

some eight years. The record, however, shows that many times during this period the case was continued and set for trial. Some of these continuances were by operation of law, some by consent, some by agreement, and some on application of defendant. Taking the record as a whole, it shows that orders were constantly made with reference to the case at practically every term until it was tried. Such a record does not show an abandoned suit.

We shall now consider the question as to whether there is any evidence in the record to sustain a judgment against the Indemnity Company for the value of the property sequestered. As to this question, we find that there is evidence in the record to show the value of the property at all times from the date it was converted by defendants up to and including the date it was replevied by them. There is absolutely no evidence in the record to show the value of the property at the time of the trial, some eight years after it was replevied. Furthermore, the judgment shows upon its face that the court based his judgment, in so far as the value of the property is concerned, upon a finding as to its value on the date of its release under replevin. In this state of the record, we are met with the contention by the Indemnity Company that, under the law as it existed at the time it executed this bond as surety, it was only liable for the value of the property at the time of trial, and not for its value at the time of replevy as held by the trial court.

█ In connection with the above, it is pointed out by the Indemnity Company that at the time this bond was executed by it, the statute did not provide, as does the present law, article 6852, that: "*  *  * And the value of the property replevied shall be proven either as of the time of the execution of the replevy bond or as of the time of the trial, as the plaintiff may elect."

We are of the opinion that the change in the law is more than a mere change of a rule of evidence or procedure, and that such change amounts to a substantial change in the contractual obligation. It follows, therefore, that article 6852, supra, cannot be given a retroactive application, and the liability of the Indemnity Company must be tested and measured by the law as it existed at the time the replevy bond was filed.

Simply stated, the Indemnity Company contends that under the statute as it existed when it executed this bond, it was only liable for the value of the property at the time of trial, and that there being no evidence in the record to show the value at such time there is no basis for a judgment against it in that particular. In support of the above contention, the Indemnity Company cites, among others, the following authorities: Watts v. Overstreet, 78 Tex. 571, 14 S. W. 704, 706,

and Luedde v. Hooper, 95 Tex. 172, 66 S. W. 55. In our opinion, these authorities and many others sustain the Indemnity Company's position.

In Watts v. Overstreet, supra, which is by the old commission, opinion adopted, it is expressly held that the value of sequestered property condemned to sale is the value at the time of trial. We quote the following from the opinion: "The value of the property, for which defendants and the sureties on their replevy bond may be liable, is not the value at the time the petition or affidavit is filed, but at the time of the trial."

In Luedde v. Hooper, supra, which is by the Supreme Court itself, it is shown:

"The court of civil appeals of the Third supreme judicial district of the state of Texas certifies that there is now pending and undecided in this court the above styled and numbered cause, which was an action by appellee, Hooper, against the appellants, in the nature of a sequestration suit to recover possession of certain personal property described in his petition, alleged to be of the value of $733. Affidavit and bond in sequestration were executed, and part of the property described in the petition was levied upon by virtue of the writ of sequestration, and thereafter, on the 18th day of February, 1898, the defendant in the sequestration suit replevied the same, with the appellants as sureties on his replevy bond.

"Upon the trial of the case the judgment prescribed by law in sequestration suits was entered, and the value of the articles assessed by the jury by their verdict was $733.50.

"We find that at the date of the sequestration suit and prior thereto the appellee was the owner of the property in controversy, and was entitled to the possession of the same; that the defendant in the suit was, in contemplation of law, a trespasser, and had possession of the property without the consent of the appellee. We also find that the verdict of the jury as to the value of the property corresponds with the evidence as to the value thereof offered by appellee in its condition about the time it was first taken possession of by the defendant in the sequestration suit and the date of the replevy bond.

"Upon the trial of the case the appellee offered evidence of the value of the property at the time he was deprived of possession of the same, which was objected to on the ground that evidence of value at the time of trial should govern. The court overruled the objections, and, in effect, permitted the witness to testify as to what was the value of the property in its condition at the time that the appellee was deprived of its possession. In this connection it is well to state that the record shows that this case was tried on the 29th day of March, 1901, in the county court of McLennan county, Texas, and the

time testified to by the witness in giving the value of the property was in 1898.

"Upon the trial of the case the appellants offered to prove the value of the property at the time of the trial, which, upon objection, was refused by the court. The bill of exception that raises this question shows that the witness was familiar with the value of this property at the time of trial, and that, if he had been permitted to testify, his evidence would have been to the effect that in its then condition the value was less than in 1898. To the ruling of the court in the two particulars above noticed the appellants properly preserved the questions by bills of exception, upon which proper assignments of errors are made in their briefs, and they are properly before this court for determination. We also find that there was no evidence offered of the value of the use of the property from the time that the appellee was deprived of possession of the same and the execution of the replevy bond up to the date of the trial.

"Notwithstanding the decisions of some of the courts of this state as to the time in which the value of property will be inquired into in cases like the above, the court of civil appeals of the third supreme judicial district of Texas certifies to the supreme court the following question:

" 'Should the value of property in a case like the present be ascertained and determined at the time of trial, or at the time that the owner was illegally deprived of possession of the same, or at the date of the execution of the replevy bond by the defendant and his sureties in such a bond?' "

In answering the question above certified, the Supreme Court, speaking through Judge Brown, said:

"When a plaintiff sues to recover personal property, and by writ of sequestration places it in the custody of the sheriff or other officer, the defendant may retain possession of the property by giving bond conditioned as prescribed in article 4874, one of the conditions being 'that he (defendant) will have such property, with the value of the fruits, hire or revenue thereof, forthcoming to abide the decision of the court, or that he will pay the value thereof,' etc. The judgment to be rendered by the court in case plaintiff shall recover is prescribed in the following article of the Revised Statutes: 'Art. 4876. The bond provided for in the three preceding articles shall be returned with the writ to the court from whence the writ issued, and in case the suit is decided against the defendant, final judgment shall be entered against all the obligors in such bond, jointly and severally, for the value of the property replevied, and the value of the fruits, hire, revenue or rent thereof, as the case may be.'

"If the property be not damaged, the defendant may discharge the judgment by delivering the property itself to the sheriff; and, if it be damaged, then he may deliver the property by paying the damages, to be assessed by the sheriff. Articles 4877, 4878.

"The language used in article 4876, 'the value of the property replevied,' has been construed by this court to mean the market value at the time of the trial. Watts v. Overstreet, 78 Tex. 571, 14 S. W. 704. The opinion in that case is well supported by sound reasons, and we deem it unnecessary to add anything to it. That decision is sustained by the following cases, construing statutes with similar provisions to ours: Brewster v. Silliman, 38 N. Y. 423; Allen v. Fox, 51 N. Y. 562, 10 Am. Rep. 641; Chapman v. Kerr, 80 Mo. 158; O'Meara v. N. A. Mining Co., 2 Nev. 112. There is seeming conflict of authority on this question, but we are satisfied to rest the construction of the statute as already announced, by which the practice of the courts of this state has been shaped. We answer that the value of property sequestered and retained by a defendant under replevy bond should be determined by its market value at the time of the trial when the question arises in the original suit and under the statute."

A careful reading of the opinion leads us to conclude that Judge Brown intended to hold that under the law, as it then existed, the measure of damages was the value of the replevied property at the time of trial treating it as in existence, and in as good condition as when replevied. In the event the property is in existence and is offered to be returned in an injured or damaged condition, it is the duty of the defendant to tender with the property the amount of such damages to be assessed by the sheriff.

From the above authorities we conclude that under the law as it existed at the time the instant bond was executed and filed, the measure of McCann's damages against the Indemnity Company, in so far as the property itself is concerned, is the value of the sequestered property at the time of trial, considering same in as good condition as it was at the time of replevy. In this connection there seems to be no contention by either side that the property can ever be tendered back to the sheriff.

The trial court expressly assessed damages in so far as the value of the property is concerned as of date the filing of the bond. This was error, and the Court of Civil Appeals was in error in affirming such judgment.

This brings us to a consideration of the contention made by the surety company that there is no evidence in the record to sustain any judgment against it for the value of the fruits, hire, revenue, or rent thereof during the detention of the property; that is, be-

tween the date of the replevy and the date of the trial. The evidence in this respect is found alone in the testimony of the plaintiff, McCann. His testimony with reference to this matter is rather brief, and we here reproduce it: "While I was engaged in the fish business it was a profitable business. As to how much my net profits were per month during January, February and March, up until the time it was taken away from me, some months we made from $1500.00 to $2000.00. Take some weeks we would run along about fifteen or twenty thousand pounds of fish a week, some weeks we wouldn't average that much, but that was the average shipment and we sold them at between three and four cents a pound net. My net profit a month would be around $1500.00, maybe $2,000.00, not all months, though. It would average a whole lot more than $500.00 net profit per month; I was shipping more fish than anybody in Corpus Christi at that time, and I don't bar the Lone Star. As to what would be the value of the use of that property mentioned in the affidavit, well, three of those boats and about three of those seines, there would be about twelve shares; take about eight or nine fishermen to run that outfit, they work three boats together them days, when there was plenty of fish, well, the boat would get three shares and a half, and the fishermen would get a share apiece out of it, and there would be about twelve shares out of the outfit, well, they would catch around, probably each outfit would catch around $2,000.00 worth of fish a month. If there was $1,000.00, you would split it up twelve ways. There were three boats in that gang, and the three boats would be worth $600.00,—that would be the boat's share. I had two outfits of that same size working. I would say safely that the whole outfit would be worth at least $600.00 a month, that is for the value of the use of it. I never got any of these boats back. I do not know what became of the boats. I heard they sold a lot of this stuff; they put a man by the name of Smith in charge of it, Smeltzer turned it over to him. He sold some of it that I know of. I don't know where any of it is now. After they gave this replevy bond I didn't pay any more attention to it."

We think the legal effect of the above-quoted testimony is merely to show what profits McCann might have made by week or month by the joint efforts of himself, his associates, and employees in using the property sequestered, in conducting an established fish business. Certainly such profits or revenues are not the fruits, hire, revenue, or rent contemplated by the statute (Rev. St. 1925, art. 6850). Hall v. Tedford (Tex. Civ. App.) 279 S. W. 314.

For the reason that there is no evidence in the record to support a judgment against the Indemnity Company, we recommend that the judgments of the Courts of Civil Appeals and of the district court against the Indemnity Company be reversed, and the cause in that respect remanded to the district court for a new trial. The judgment against the defendants is not appealed from, and we recommend that the judgment against them be left undisturbed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are in part affirmed, and in part reversed and remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.